**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jennifer Jones-Reitan,<br><br>   Plaintiff,<br><br>v.<br><br>Carolyn W. Colvin, Commissioner of Social Security,<br><br>   Defendant. | No. CV12-1145-PHX-DGC<br><br>**ORDER** |

      Plaintiff Jennifer Jones-Reitan applied for disability insurance benefits and supplemental security income on December 16, 2008, and January 2, 2009, respectively, claiming to have been disabled as of March 10, 2008. Tr. 136-143. Her claims were denied on April 16, 2009 (Tr. 111-114), and upon reconsideration on August 7, 2009 (Tr. 116-122). Plaintiff was granted a hearing in which she appeared before an Administrative Law Judge ("ALJ") on December 9, 2010. Tr. 59. In a prehearing letter dated December 6, 2010, Plaintiff moved to amend her application for disability to a closed period from March 10, 2008, to May 21, 2010. Tr. 61, 242. The ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act. Tr. 11-23. The ALJ's decision became Defendant's final decision when the Appeals Council denied review on April 18, 2012. Tr. 1-3. Plaintiff then commenced this action for judicial review pursuant to 42 U.S.C. § 405(g). Doc. 1. The Parties have not requested oral argument. For reasons that follow, the Court will affirm Defendant's decision.

**I.     Standard of Review.**

Defendant's decision to deny benefits will be vacated "only if it is not supported by substantial evidence or is based on legal error." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance, i.e., such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* In determining whether the decision is supported by substantial evidence, the Court must consider the record as a whole, weighing both the evidence that supports the decision and the evidence that detracts from it. *Reddick v. Charter*, 157 F.3d 715, 720 (9th Cir. 1998). The Court cannot affirm the decision "simply by isolating a specific quantum of supporting evidence." *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975); *see Robbins*, 466 F.3d at 882.

**II.    Analysis.**

For purposes of Social Security benefits determinations, a disability is "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505. Determining whether a claimant is disabled involves a five-step evaluation. The claimant bears the burden in steps one through four of showing that (1) she is not engaged in a substantial gainful activity, (2) she has a severe medically determinable physical or mental impairment, and (3) the impairment meets or equals a listed impairment or (4) her residual functional capacity ("RFC") precludes her from performing her past work.[1] If at any step the Commissioner determines that a claimant is or is not disabled, the analysis ends; otherwise it proceeds to step five. The Commissioner bears the burden at step five of showing that the claimant has the RFC

---

[1] RFC is the most a claimant can do in light of the limitations caused by her impairments. *See Rodriguez v. Bowen*, 876 F.2d 759, 762 (9th Cir. 1989); 20 C.F.R. § 416.945 (a); SSR 96-8p, 1996 WL 374184 (July 2, 1996).

to perform other work that exists in substantial numbers in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v) & 416.920(a)(4)(i)-(v).

The ALJ found at step one that Plaintiff had not worked since her alleged onset date. Tr. 13. At step two, the ALJ found that Plaintiff suffered from the following severe combination of impairments: obesity, degenerative disc disease of the lumbar spine post decompression laminectomy at L4-5 and L5-S1 and fusion at L5-S1, and history of methamphetamine abuse, in early remission. *Id.* The ALJ determined at step three that none of these impairments or their combination met or equaled a listed impairment. Tr. 18. The ALJ then considered the entire record and determined that Plaintiff had the RFC to perform a full range of sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a) with some additional limitations, including that "claimant is restricted from working in environments with concentrated exposure to fumes, dust or odors." Tr. *Id.* At step four, the ALJ determined that Plaintiff was not disabled because she was capable of performing her past relevant work. Tr. 21. In the alternative, at step five, the ALJ concluded that Plaintiff was not disabled because she was capable of performing other work that existed in significant numbers in the national economy. Tr. 21-22.

Plaintiff argues that the ALJ erred by rejecting the medical opinion of a treating source (Doc. 17 at 4-6) and by rejecting her subjective complaints without adequate foundation (*id.* at 6-7). The Court will address each argument in turn.

**A.   Medical Opinion Evidence.**

"The ALJ must consider all medical opinion evidence." *Tommasetti*, 533 F.3d at 1041; *see* 20 C.F.R. § 404.1527(c); SSR 96-5p, 1996 WL 374183, at *2 (July 2, 1996). The ALJ may reject the opinion of a treating or examining physician by making "'findings setting forth specific legitimate reasons for doing so that are based on substantial evidence in the record.'" *Thomas*, 278 F.3d at 957 (citation omitted). "The ALJ can 'meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings."

*Id.* "The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record." *Id.* Further, "[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Id.*

Plaintiff argues that the ALJ failed to consider the opinion of her treating neurologist, Dr. Richard Maxwell, M.D. Doc. 17 at 4-6. On February 5, 2009, Dr. Maxwell performed a decompression laminectomy and a posterior fusion on Plaintiff. Tr. 291-296, 603. Plaintiff sought treatment from Dr. Maxwell after the surgery on February 27, 2009. Tr. 603. Dr. Maxwell's notes from that visit indicate that Plaintiff "is doing quite well. X-rays are satisfactory." *Id.* Dr. Maxwell next treated Plaintiff on May 15, 2009, and his report states that Plaintiff "has fallen a few times. She has a little bit of bruising. She fell in a door threshold." Tr. 602. From his examination, Dr. Maxwell noted "[t]wo views of the lumbar spine show an instrumented fusion at L5-S1 with a wide decompression of the L4, L5 and S1 nerve roots"; "[n]o weakness"; "[s]traight leg raising is negative"; and "knee jerks and ankle jerks are intact." Tr. 601-602. Dr. Maxwell's plan was "to get [Plaintiff] some physical therapy." Tr. 602. Plaintiff returned to Dr. Maxwell's office on August 21, 2009, and during that visit Dr. Maxwell added Naprosyn to Plaintiff's medication regimen. Tr. 600. Dr. Maxwell's medical records from Plaintiff's May 21, 2010, office visit note the following subjective symptoms: "[s]he does not score nearly as badly on her disability scales as she used to. . . . She is going to have permanent bending restrictions including occasional failure to climb, kneel, stoop and she cannot lift more than 35 pounds. She has a fusion at L5-S1 but has done pretty well with that altogether. Occasionally she will have some pain in her foot and she occasionally needs a mild pain medication." Tr. 598. Dr. Maxwell noted the following objective findings from that visit: "walks with a nonantalgic gait. No walking aid is used. The cervical spine is nontender posteriorly. There is no restricted motion and no pain with cervical traction or pressure. Muscle strength is

1  normal in upper extremities and lower extremities. . . . Normal coordination and
2  balance." Tr. 599.  On December 10, 2010, Dr. Maxwell opined that it was appropriate
3  for Plaintiff to be off work from the date of her surgery, February 5, 2009, to May 21,
4  2010. Tr. 608.

5  The ALJ gave Dr. Maxwell's opinion weight, noting that Dr. Maxwell had
6  released Plaintiff to work with a light work restriction on May 21, 2010.  Tr. 21.  The
7  ALJ did not, however, refer to Dr. Maxwell's opinion that it was appropriate for Plaintiff
8  not to work from February 5, 2009, to May 21, 2010.  Defendant argues that "Dr.
9  Maxwell's checkmark in the yes box in response to Plaintiff's attorney's question about
10 whether it was appropriate for Plaintiff to be off work was not a medical opinion."
11 Doc. 18 at 16.  The Commissioner, not the treating physician, makes findings of
12 disability.  20 C.F.R. § 404.1527(d)(1).  Thus, the ALJ was not required to accept the
13 opinion of an examining doctor about whether Plaintiff would be able to perform full-
14 time work.  *Id.* at § 404.1527(d)(3) ("We will not give any special significance to the
15 source of an opinion on issues reserved to the Commissioner").  Moreover, the ALJ was
16 not required to accept Dr. Maxwell's opinion that it was appropriate for Plaintiff not to
17 work from February 5, 2009, to May 21, 2010, because that opinion – a checked box – is
18 "brief, conclusory, and inadequately supported by clinical findings." *Thomas*, 278 F.3d
19 at 957; *see also Young v. Heckler*, 803 F.2d 963, 967-68 (9th Cir. 1986) (noting that a
20 physician's report indicating "total disability" was "brief and conclusionary in form with
21 little in the way of clinical findings to support the conclusion that appellant was totally
22 disabled" and "[i]n light of the conclusionary nature of [the] report, it was appellant's
23 responsibility to produce evidence either confirming [it] or reviewing appellant's
24 condition [for that period of disability].").

25 Plaintiff points to the opinion of Dr. Michael Gurvey, M.D., the medical expert
26 who testified at the December 9, 2010, hearing (Tr. 67), and argues that Dr. Gurvey's
27 opinion with regard to the eight month period from February 5, 2009, to October 2009 "is
28 consistent with Dr. Maxwell's opinion."  Doc. 17 at 5.  Dr. Gurvey examined the record

1  (Tr. 68) and opined that Plaintiff's condition did not meet or equal one of the listings for
2  any 12-month period between March 10, 2008, and May 21, 2010 (Tr. 69). The ALJ
3  gave the opinion "significant weight" after having determined that Dr. Gurvey's opinion
4  comported with the medical evidence that "less than 12 months after her surgery, her gait
5  was nonantalgic while her muscle strength and balance were normal . . . [and] straight leg
6  raising was negative."  Tr. 21 (citing Tr. 342-345).  With respect to the period from
7  February 5, 2009, to October 2009, Dr. Gurvey found that Plaintiff met Listing 1.04A.
8  Tr. 72. Although this opinion comports with Dr. Maxwell's opinion for the same period,
9  Dr. Gurvey's opinion for the period from October 2009 to May 21, 2010 controverts Dr.
10 Maxwell's opinion. Even given this partial corroboration, the Court cannot find that
11 Plaintiff met her burden in producing evidence confirming Dr. Maxwell's brief,
12 conclusory, and inadequately supported opinion of disability – an issue reserved to the
13 Commissioner.[2] Plaintiff has not shown that the ALJ rejected any substantive findings of
14 Dr. Maxwell that would require her to give specific legitimate reasons for doing so. This
15 does not constitute legal error.

16 **B.  Plaintiff's Subjective Testimony.**

17 Plaintiff testified that she lives with her husband and their 18 year-old son, as well
18 as three dogs, two cats, and a bird. Tr. 66. Plaintiff stated that she takes care of the
19 animals. *Id.* Plaintiff testified that she last used crystal meth during a relapse from
20 March to July 2010, and before that she had last used in February 2008. Tr. 73-74.

21 Plaintiff stated that before her February 2009 surgery, she could not lift or carry
22 anything because it caused extreme pain down her legs. Tr. 92-93. Before the surgery,

---

[2] Plaintiff argues in her reply brief (Doc. 19) that as the treating neurosurgeon, Dr. Maxwell's opinion is entitled to "controlling weight" under *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007) (Doc. 19 at 2). A treating doctor's opinion is generally entitled to the most weight, but this rule does not apply to issues reserved to the Commissioner. *See* 20 C.F.R. § 404.1527(d)(3); SSR 96-5P, 1996 WL 374183, at *2-3 (July 2, 1996). Moreover, the Court will not consider arguments raised for the first time in a reply brief. *Lentini v. Cal. Ctr. for the Arts,* 370 F.3d 837 n. 6 (9th Cir. 2004); *Gadda v. State Bar of Cal.,* 511 F.3d 933, 937 n. 2 (9th Cir. 2007).

Plaintiff reported that she could stand for about 45 minutes before the pain would cause her to lie down for half an hour to an hour. Tr. 93. Plaintiff stated that she had to lie down to alleviate the pain because sitting down "put all the pressure onto my lower back and it hurt worse." Tr. 93. Additionally, Plaintiff stated that she could sit in a chair for 15 minutes. Tr. 94. Plaintiff testified that she could not bend at the waist, and that she would pick something up off the floor by bending at the knees. Tr. 94. Plaintiff described having a slow recovery from her February 2009 surgery. Tr. 76. She fell on several occasions and had difficulty with her balance. Tr. 76-81.

Eight months after Plaintiff's surgery – in October 2009 – Plaintiff reported that she was able to walk a mile in about 45 minutes to an hour, stopping to take breaks during the walk and needing to sit and rest afterwards. Tr. 97. Plaintiff testified that she could stand for an hour – or for 90 minutes if she shifted positions while standing – before needing to sit and rest. Tr. 97-98. Plaintiff stated that she could sit upright for about an hour to 90 minutes before having to get up and move. Tr. 98. Plaintiff recalled that her lifting restriction was five to ten pounds, but she testified that she did not try to carry or lift anything during this period. Tr. 98. After the surgery, Plaintiff testified that her bending had improved, but she stated that she could still not bend at the waist. Tr. 99.

Plaintiff testified that she could not work eight hours a day, five days a week from March 10, 2008, to May 21, 2010, because "I could not sit at my desk long enough to do my job. They said take frequent breaks, that doesn't work." Tr. 100. Plaintiff stated that she had not yet found another job, but was still looking. Tr. 67.

The ALJ concluded Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not credible to the extent they are inconsistent with the RFC assessment. Tr. 19. In reaching this conclusion, the ALJ evaluated Plaintiff's testimony using the two-step analysis established by the Ninth Circuit. *See Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). Applying the test of *Cotton v. Bowen*, 799 F.2d 1403 (9th Cir. 1986), the ALJ first determined that Plaintiff's impairments could reasonably produce the symptoms alleged. Tr. 19. Given this

conclusion, and because there is no evidence of malingering, the ALJ was required to present "specific, clear and convincing reasons" for finding Plaintiff not entirely credible. *Smolen*, 80 F.3d at 1281. This clear and convincing standard "is the most demanding required in Social Security cases." *Moore v. Comm'r of SSA*, 278 F.3d 920, 924 (9th Cir. 2002).

"Pain of sufficient severity caused by a medically diagnosed 'anatomical, physiological, or psychological abnormality' may provide the basis for determining that a claimant is disabled." *Light v. SSA*, 119 F.3d 789, 792 (9th Cir. 1997) (citing 42 U.S.C. § 423(d)(5)(A); *Bunnell v. Sullivan*, 947 F.2d 341, 344-45 (9th Cir. 1991)). "Once a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on lack of objective medical evidence to fully corroborate the alleged severity of pain." *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004) (citation and alterations omitted); *see* 20 C.F.R. § 404.1529(c)(2); SSR 96-7p, 1996 WL 374186, at *1 (July 2, 1996).

Additionally, although "[a]n ALJ's finding that a claimant generally lacked credibility is a permissible basis to reject excess pain testimony, . . . a finding that the claimant lacks credibility cannot be premised wholly on a lack of medical support for the severity of the pain." *Light*, 119 F.3d at 792 (citations omitted). General assertions that the claimant's testimony is not credible are insufficient. *See Parra v. Astrue,* 481 F.3d 742, 750 (9th Cir.2007). The ALJ must identify "what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* (quoting *Lester,* 81 F.3d at 834). In weighing a claimant's credibility, the ALJ may consider some of the following factors: claimant's reputation for truthfulness, inconsistencies either in claimant's testimony or between his testimony and his conduct, unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, claimant's daily activities, claimant's work record, and the compatibility of claimant's testimony with the medical evidence. *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002); *Lee v. Astrue*, 472 Fed. Appx. 553, 555 (9th Cir. 2012).

The ALJ rejected Plaintiff's testimony on two grounds. First, the ALJ examined the objective evidence of record dating before Plaintiff's February 2009 surgery and made the following findings: (1) in June 2008, Plaintiff exhibited reduced range of motion of the neck and back, but there was no evidence of "subluxation or laxity," her spine and pelvis strength was normal, her pathologic and deep tendon reflexes were normal, and straight leg raising was normal (Tr. 279); (2) on October 14 2008, Plaintiff was able to walk on her toes, heels, and able to walk toe to heal (Tr. 326); (3) a December 2008 MRI did not reveal spinal or neuroforaminal stenosis (Tr. 324); (4) a medical report from August 4, 2008, notes that Plaintiff's disk herniation at the L5-S1 level "appears to have resolved" (Tr. 271); and (5) an electrodiagnostic report reviewed on August 4, 2008, showed normal nerve function (Tr. 271). In noting the above, the ALJ determined that "while the claimant suffered from severe degenerative disc disease at L5-S1, the objective evidence does not show that it was as severe as alleged." Tr. 20.

Next, the ALJ examined the objective evidence of record from after Plaintiff's February 2009 surgery and made the following findings: (1) on March 12, 2009, Plaintiff reported that her back pain had improved and an examination of the upper body "was unremarkable in terms of joint motion, strength, sensation and deep tendon reflexes" and "the lower extremities . . . had normal deep tendon reflexes . . . [and] no motor weakness" (Tr. 341-42); (2) physical therapy notes from June 5, 2009, show improved range of motion of the lumbar spine to 75 to 95 percent of normal and improved muscle strength (Tr. 532)[3]; (3) on May 21, 2010, Dr. Maxwell noted that Plaintiff was taking modest

---

[3] The ALJ says "75-95%," but the report shows that Plaintiff's lumbar spine range of motion was at 85 percent for the flexion motion, 35 percent for the extension motion, 95 percent for the side bending right and left motions, and 75 percent for the right and left rotation motions. Tr. 532. Despite this discrepancy, the ALJ has referred to sufficient objective evidence supporting the finding that Plaintiff's functional capacity improved soon after her February 2009 surgery, and therefore the Court finds that any error in this respect is harmless. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) ("the court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." (quotation marks and citations omitted)).

1    amounts of pain medication (Tr. 598); (4) a March 2009 x-ray showed no acute
2    abnormalities and a L5-S1 fusion with no evidence of hardware abnormality (Tr. 289);
3    (5) a follow-up May 2009 x-ray showed no abnormalities (Tr. 540); and (6) Dr.
4    Maxwell's May 21, 2010, report observed that Plaintiff had "[n]ormal coordination and
5    balance" (Tr. 599).  In noting the above, the ALJ determined that although Plaintiff's
6    functional capacity was reduced at the time of her February 2009 surgery, "its duration
7    did not last for 12 months.  Rather, treatment notes show that the claimant showed
8    significant improvement soon after her procedure."  Tr. 20.  The Court cannot find that
9    this part of the ALJ's credibility determination constitutes error.  *See Carmickle v.*
10   *Comm'r, Soc. Sec. Admin.,* 533 F.3d 1155, 1161 (9th Cir.2008) ("Contradiction with the
11   medical record is a sufficient basis for rejecting the claimant's subjective testimony.")
12   (citation omitted); *Batson v. Comm'r of Soc. Sec. Admin.,* 359 F.3d 1190, 1197 (9th
13   Cir.2004) (lack of objective medical evidence supporting claimant's allegations supported
14   ALJ's finding that claimant was not credible).

15   The ALJ noted inconsistencies in Plaintiff's testimony about her daily activities.
16   Tr. 21.  After having examined Plaintiff's activities of daily living, the ALJ determined
17   that in light of Plaintiff's travel to Las Vegas (Tr. 570) and her ability to take care of her
18   older children (Tr. 598), Plaintiff's "functional status was greater than alleged" (Tr. 21).
19   Plaintiff argues that that the ALJ failed to explain how this evidence demonstrates that
20   her functional status was greater than alleged because "[t]here is no testimony regarding
21   if she was a passenger or diver to Las Vegas, did she sit or recline for the drive, or how
22   many stops were made during the trip," and that "[she] testified her son was 18 years old
23   [and] [a]n 18 year old child does not require the intensity of care and supervision that
24   would discredit [Plaintiff]."  Doc. 17 at 7.  As to Plaintiff's daily activities, the Court
25   finds that the ALJ "properly considered Plaintiff's daily activities in finding [her]
26   testimony incredible."  *Curry v. Astrue*, No. 09-CV-2580-PHX-GMS, 2010 WL 3789535,
27   at *6 (D. Ariz. Sept. 22, 2010); *see Thomas*, 278 F.3d at 958-59 (the ALJ did not err in
28   rejecting the claimant's pain testimony where the claimant "was able to perform various

household chores such as cooking, laundry, washing dishes, and shopping"). "Although evidence of [the claimant's] daily activities may also admit of an interpretation more favorable to [the claimant], the ALJ's interpretation was rational, and we must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation." *Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005) (quotation marks and citations omitted) (ALJ found claimant "able to care for her own personal needs, cook, clean and ship" and concluded that these activities "suggest she is quote functional.").

The Court concludes that substantial evidence supports the ALJ's credibility determination, and that the ALJ provided clear and convincing reasons for discounting Plaintiff's credibility.

**IT IS ORDERED:**

1. Defendant's administrative decision is **affirmed**.
2. The Clerk is directed to enter judgment accordingly.

Dated this 1st day of April, 2013.

_____
David G. Campbell
United States District Judge

- 11 -